UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| United States | ) |
| | ) |
| v. | ) No. : 20-cr-10046-GAO |
| | ) |
| Aaron Smith, | ) |
| Defendant. | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

Defendant Aaron Smith respectfully requests that this Court impose a sentence that is below or "in variance" with the advisory guideline range. As grounds therefore, defendant states that his personal history, his post-arrest reahbilitation and the circumstances of this offense warrant such a sentence.

On August 26, 2019, Aaron Smith was arrested and charged in the Boston Municipal Court with trafficking in 200 grams or more of methamphetamine. On September 20, 2019, the state charges against the defendant were dismissed and the defendant made his initial appearance in U.S. District Court for the instant offense. The state court charges and the subsequent federal charges complained of in this case stem from the same conduct.

The defendant was detained in federal custody for the instant offense until March 26, 2020, when he was released on an unsecured bond. On May 26, 2020, the defendant pled guilty to a two-count Information charging him with (1) Conspiracy to Distribute and to Possess and (2) Possession with Intent to Distribute 50 Grams or More of a Mixture and Substance Containing Methamphetamine, both in violation of 21 U.S.C. § 841.

Defendant submits this memorandum in order to assist the Court in fashioning the most appropriate sentence by addressing each of the available sentencing options under the

provisions of 18 U.S.C. §3553(a), as constitutionally required by the Supreme Court in light of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). This memorandum will supplement the Presentence Report ("PSR") and set forth additional reasons why this Court should adopt the recommendations set forth below.

Consistent with the federal courts' long-standing, deep concern for individualized sentencing, the United States Supreme Court has repeatedly affirmed individualized assessments accomplished by considering applicable 18 U.S.C. § 3553(a) factors in fashioning an appropriate sentence. See e.g. *United States v. Booker*, 543 U.S. 220, 259-260 (2005); *Rita v. United States*, 551 U.S. 338 (2007); *Gall v. United States*, 552 U.S. 38 (2007); See *Pepper v. United States, 562 U.S. 476, 487-88 (2011)*). Moreover, the U.S. Supreme Court has highlighted Congress's directive that: "[n]o limitation . . . be placed on the information concerning the background, character, and conduct of a defendant that a district court may receive and consider for the purpose of imposing an appropriate sentence." *Pepper*, supra, at 490-91, citing 18 U.S.C. § 3661.

I. **GUIDELINE CALCULATION**

The U.S. Probation Office's PSR in this case concluded that the total offense level is 34. PSR ¶ 55. Probation has also determined that Mr. Smith's criminal history category is I. ¶ The PSR calls for a three-level reduction for acceptance of responsibility. Finally, the PSR mentions application of §5C1.2, which allows for ta two-level reduction pursuant to USSG §2D1.1(b)(18), making the adjusted offense level 29 (87-108 months)

II. **RELEVANT SENTENCING FACTORS**

A. ***The history and characteristics of Aaron Smith***

Aaron is 34 years-old. He was born into an intact, middle-class family in Reading, Massachusetts. He is the youngest of three children, Rachel (36), Eric (deceased) born to his

parents, Stacey and William. When he was 7 years old, in 1994, his father was diagnosed with terminal cancer and was given a short time to live. However, his father did not pass away until 2010, some 15 years after the initial diagnosis. Aaron recounts that the uncertainty of his father's illness, his treatment and stresses that this placed on his family had a tremendous impact on his childhood and adolescence. He was diagnosed with ADHD at age 10, prescribed Ritalin and placed in an Individualized Education Program to try to ameliorate some of his challenges.

By 2004, his junior year in high school, Aaron began using cocaine two to five days per week. In spite of his, by then heavy drug use, troubles at home, and his learning difficulties, Aaron graduated from Reading Memorial High School in June 2005. He was active in sports, playing both basketball and football, but had poor a poor academic record while not being a problem at school in any other way. He enrolled at UMASS Dartmouth in September 2005 and dropped out in May 2006 after his brother committed suicide. Eric and Aaron were very close and Eric's tragic, and unexpected, passing were devasting for Aaron. During this period, Aaron began a pattern of binge drinking where he would drink almost every night of the week to the point of not being able to remember what had transpired during his intoxication.

After dropping out of college, Aaron worked primarily in the restaurant industry. In 2010 Aaron moved to Vermont, where he also began taken prescription narcotics, namely Percocet 30. In 2012, Aaron's addiction to intoxicating substances, led his family to send him to a private, in-patient facility in California. However, after leaving the program in 2014, Aaron almost immediately began using. By 2015, thet ried methamphetamines for the first time, and by 2016 he was using the drug on a daily basis and, thereafter, he began selling the drug to support his habit.

In 2018, the defendant began using methamphetamine intravenously. He would smoke methamphetamine as well as use it intravenously throughout the day, which could be as many as 30 times per day. In May 2019, he was diagnosed with HIV/AIDS. At that time, he was living with his domestic partner, Angelies Gutierrez Vega, then 31 years of age. Angelies overdosed and died shortly after Aaron's arrest. Her body was found at the apartment they had shared on Cooper Street in Boston.

### B.     *Post-Arrest Rehabilitation*

Aaron was in custody from the date of his arrest until May of 2020 in part because of his mother's concerns for his safety and well-being. Although supportive, Stacey, his mother, refused to sign a bond for his release or accept that he reside with her. It was only after many months at the Wyatt Detention center and hours of conversation and reflection, did she finally agree in May of 2020 to sign a personal guarantee and allow for Aaron to come home to Reading. Given all that has transpired with Aaron's addiction, this decision was not easy and not without some family discord. To this day, Aaron's sister, Rachel, does not have any contact with him.

Although, there were stumbles at the outset, a positive drug screen and missed urine tests, Aaron began working full-time at Walden Local Meat in Tewksbury. He earned $17.70 as a driver and has great autonomy and responsibility at the job, driving all over New England to make deliveries.

From September of 2020 until his successful completion in December 2021, Aaron participated in the RISE Program. His participation in the program, particularly the restorative Justice component has had a life-altering impact on him. He has been able to see, feel and understand not just the injuries to himself from both selling and using drugs but also the real harms to the larger society of which he is a member.

But his work did not stop with RISE, he has also been active with the Gavin Foundation through a program known as Expanding Peer to Peer Opportunities. The program pairs individuals with a Peer Support Specialist who has lived the addiction experience and has successfully built a new life in recovery. Aaron is also training to be a Recovery Coach through the Gavin Foundation.

Aaron is also involved in the MyTern Program at Tufts University, which allows him to take credit-courses at Tufts as a pathway to continued higher education. As the programs mission states they provide "education and mentorship to – and by – those who have been directly impacted by the criminal justice system, MyTERN combines Civic Studies courses in higher learning with community involvement through our broad network of partner organizations." Through MyTern it is Aaron's hope to matriculate at Bunker Hill Community College and subsequently at Tufts to finish his college education.

Aaron is a bright, engaging and thoughtful individual who loves to write and is also working hard to be a better son to his mother. During the time he was on home confinement, prior to being able to work he did several carpentry projects around the house.

Aaron's post-arrest rehabilitation has been quite remarkable and possible through his hard and earnest work and programs such as RISE and institutions like Tufts and the Gavin Foundation.

**CONCLUSION**

Therefore, given the nature of the offense, Defendant's personal history as set forth more fully in the PSR, the contents of the attached letters and documents, the defendant respectfully requests this Honorable Court fashion a sentence "sufficient but not greater than necessary," as provided for in 18 U.S.C. § 3553(a). The Defendant would urge the Court to the

vary from the Sentencing Guidelines and impose a sentence that avoids any further incarceration.

                    Respectfully submitted,
                    Aaron Smith,
                    By his attorney,

                    Ivan E. Mercado
                    MA BBO No. 633947
                    MERCADO & RENGEL, LLP
                    1330 Beacon St. Ste. 300
                    Brookline, MA 02446
                    Phone: 617-284-6700
                    Email: ivan@mercadorengel.com

**CERTIFICATE OF SERVICE**

    I, Ivan E. Mercado, hereby certify that a true and accurate copy of the foregoing motion has been served on all parties of record by the CF/ECM system.

                    Ivan E. Mercado

Dated: January 19, 2022